## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

GABRIEL SHIFF and ROBERT SONSINI, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

FORD MOTOR COMPANY,

Defendant.

Civil Action No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Gabriel Shiff and Robert Sonsini, individually and on behalf of all others similarly situated, allege as follows, on personal knowledge and investigation of their counsel, against Defendant Ford Motor Company ("Ford" or "Defendant"):

## **INTRODUCTION**

1.      This is a class action, brought under New Jersey law, on behalf of a proposed class of consumers who purchased or leased in New Jersey one or more of the following vehicles designed and manufactured by Defendant Ford and equipped with a 360-Degree Camera system: a 2020-2023 Ford Explorer, a 2020-2023 Lincoln Aviator, and/or a 2020-2022 Lincoln Corsair (the "Affected Vehicles").

2.      The bases for the class claims are set forth in greater detail herein, but arise from Ford's unlawful conduct with respect to the defective design and/or manufacture of the Affected Vehicles, as well as Ford's deceptive and misleading marketing, advertising, and sale or lease of the Affected Vehicles to Plaintiffs and the class.

3.      Specifically, Ford designed, manufactured, marketed, advertised, and sold or leased the Affected Vehicles to Plaintiffs and the class with a defective 360-Degree Camera

system (the "Defective Camera"), which routinely and systematically "glitches" or malfunctions while the Affected Vehicles are operating in reverse, resulting in a total loss of the rear camera image and displaying instead a blank screen or blue or black image.  This defect leaves the vehicle operator with no operational rear-view camera, and renders the 360-Degree Camera feature – an upgraded option for which Plaintiffs and the class paid extra – effectively useless while reversing.

4. Ford knew, or should have known, about the Defective Cameras long before it marketed, advertised, and sold or leased the Affected Vehicles to Plaintiffs and the class, yet it never informed Plaintiffs and the class about the Defective Cameras in the Affected Vehicles.

5. The National Highway Traffic Safety Administration ("NHTSA") requires that all new vehicles in the United States manufactured since May 2018, including each of the Affected Vehicles, be equipped with a rear-view camera.  The non-functioning Defective Cameras render the Affected Vehicles purchased or leased by Plaintiffs and the class noncompliant with these federal mandates.

6. Moreover, a non-functioning rear-view camera system, such as those installed in the Affected Vehicles purchased or leased by Plaintiffs and the class, increases the risk that a vehicle will be involved in a crash while operating in reverse, potentially causing injury or even death to the vehicle's occupants, the occupants of other vehicles, and/or pedestrians.

7. Even Ford recognizes – and indeed has repeatedly conceded – that **"[t]he loss of the rear camera image during a reverse action increases the risk of a crash."**  See, e.g., Attachment A, 11/20/21 Memorandum from Ford to Dealers regarding Safety Recall 21S44.  Yet Plaintiffs and the class suffer the loss of their rear camera functionality on a regular basis, and are forced to operate their vehicles despite such loss.

2

8.      Further, in most instances, Plaintiffs and the class paid extra for the defective 360-Degree Camera system, which is an upgraded feature in the Affected Vehicles over a standard rear-view camera.  Yet the very feature for which Plaintiffs and the class paid extra is defective and, in many cases, non-functioning.

9.      The rear-view camera systems on vehicles that are just three years old or newer should not systematically fail on a regular basis.

10.     Moreover, the Defective Cameras in the Affected Vehicles are covered by Ford's manufacturer's warranty, and therefore are entitled to be repaired or replaced under such warranty.

11.     Despite this, Defendant Ford and its authorized dealerships have refused to adequately repair or replace the Defective Cameras in the Affected Vehicles.

12.     Indeed, Ford has issued no fewer than three recalls relating to the Defective Cameras, yet the defect persists in the Affected Vehicles.  Ford has recently informed purchasers and lessees of the Affected Vehicles, including Plaintiffs and the class, that although it is "**working on a service fix,**" no such **"fix"** is currently available.  <u>See</u> Attachment F, 4/23 Correspondence from Defendant to Lincoln Owners regarding Important Safety Recall 23S02/NHTSA Recall 23V022.

13.     In the meantime, Plaintiffs and the class are forced to continue to drive their new or newer Affected Vehicles with non-functioning rear-view cameras, placing themselves, their families, and others at an increased risk of a crash and bodily harm.

14.     As alleged in greater detail herein, Ford's design, manufacture, and installation of the Defective Cameras in the Affected Vehicles, and its subsequent marketing, advertising, and sale or lease of such vehicles to Plaintiffs and the class without informing Plaintiffs and the class

of the Defective Cameras' inherent defects, constitutes an omission of material fact and a deceptive business practice in violation of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-1, et seq., and further violates New Jersey common law as set forth herein.

15.    This action seeks redress for Plaintiffs and the class in the form of compensatory, statutory, treble, and/or punitive damages under the CFA and common law, as well as injunctive relief, which would include, inter alia, an order directing Ford to cease the unlawful practices challenged herein, specifically the manufacture, installation, marketing, advertising, and sale or lease of the Defective Cameras in the Affected Vehicles, and to initiate a program to provide refunds, repairs, and/or restitution to Plaintiffs and the class.

## THE PARTIES

16.    Plaintiff Gabriel Shiff is an individual and a citizen and resident of Englewood, New Jersey and a member of the proposed class of consumers who purchased or leased from Defendant Ford one or more Affected Vehicles with Defective Cameras in New Jersey within the class period.

17.    Plaintiff Robert Sonsini is an individual and a citizen and resident of Bermuda Dunes, California and a member of the proposed class of consumers who purchased or leased from Defendant Ford one or more Affected Vehicles with Defective Cameras in New Jersey within the class period.

18.     Defendant Ford Motor Company is a for-profit corporation organized and existing under the laws of Delaware, with its principal place of business located at One American Road, Dearborn, Michigan 48126; and thus is a citizen of Delaware and Michigan.

## JURISDICTION AND VENUE

19.     Federal jurisdiction over this matter is proper under the Class Action Fairness Act in that this is a proposed class action, Defendant is a citizen of a different state than the Plaintiffs and members of the proposed class, and the total amount in controversy exceeds $5 million.

20.     This Court has personal jurisdiction over Defendant because: (a) Defendant is authorized to do business, and in fact continuously and systematically conducts business, in the State of New Jersey; (b) Defendant continuously and systematically markets, advertises, sells, and leases its Ford and Lincoln vehicles to consumers, including Plaintiffs and the class, in New Jersey; (c) the claims and injuries alleged herein took place in New Jersey, in that Plaintiffs and the class purchased or leased their vehicles in New Jersey from Defendant's authorized dealerships in New Jersey, and have suffered injury and damages including the loss of their Defective Cameras in New Jersey; and (d) Defendant has committed tortious acts within New Jersey (as alleged, without limitation, throughout this Complaint).

21.     Venue is proper pursuant to 28 U.S.C. § 1391 in the District of New Jersey, Vicinage of Newark, in that Plaintiffs and the class purchased their Affected Vehicles from Defendant's authorized dealership located in this District and suffered injury in this District. Moreover, Plaintiff Gabriel Shiff is a resident and citizen of this District and Vicinage.

## FACTUAL ALLEGATIONS

22.     Defendant Ford is the designer, manufacturer, marketer, advertiser, and seller or lessor of Ford and Lincoln vehicles, including the Affected Vehicles at issue in this lawsuit: the 2020-2023 Ford Explorer, the 2020-2023 Lincoln Aviator, and the 2020-2022 Lincoln Corsair.

23.     Specifically, Ford designed and manufactured the Affected Vehicles and their component parts, including the defective 360-Degree Camera systems described herein.  Ford

further developed, approved, and mandated the specifications of the Defective Cameras, as well as the practices and procedures for building and installing the Defective Cameras in the Affected Vehicles, and in fact built and installed the Defective Cameras in the Affected Vehicles.

24.     Additionally, Ford was and is responsible for designing, creating, and disseminating the advertising, marketing, and promotional materials relating to the Affected Vehicles and their component parts, including the Defective Cameras, as well as the owners' manuals and warranty booklets for said vehicles and components.

25.     Ford sells and leases the Affected Vehicles via its dealerships in New Jersey and throughout the United States, and authorizes such dealerships to service and repair said vehicles.

26.     Ford also issues a manufacturer's warranty for the vehicles it sells and leases, including the Affected Vehicles, and it authorizes its dealerships to perform necessary services, repairs, and software updates for such vehicles under such warranty.

27.     Specifically, Ford provides a **"New Vehicle Limited Warranty"** for every vehicle it sells or leases, including the Affected Vehicles, which provides, inter alia, 4-year/50,000-mile **"bumper-to-bumper"** coverage of **"all parts on the vehicle that require repair, replacement or adjustment as a result of a manufacturing defect in factory-supplied materials or factory workmanship."**[1]  Under the warranty, Ford is required to **"repair"** or **"replace"** any and all defective parts on the Affected Vehicles within the specified coverage period, including the Defective Cameras at issue in this lawsuit.

28.     The Affected Vehicles – 2020-2023 Ford Explorers, 2020-2023 Lincoln Aviators, and 2020-2022 Lincoln Corsairs – are all midsize sport-utility vehicles ("SUVs").

29.     All Affected Vehicles, at minimum, come standard with a rear-view camera.

---

[1] The 4-year/50,000-mile coverage applies only to the Lincoln Aviator and Lincoln Corsair.  The Ford Explorer has a slightly shorter coverage period of 3 years or 36,000 miles.

30.     Indeed, the NHTSA requires that all new vehicles manufactured after May 2018, including the Affected Vehicles, be equipped with a rear-view camera.

31.     The purpose of this federal requirement is to reduce the number of injuries and deaths from crashes while operating vehicles in reverse, particularly with respect to children, who are at a higher risk of suffering injury or death in a backing crash.

32.     In an effort to increase safety and convenience, Ford offers an optional, upgraded 360-Degree Camera system on certain of its vehicles, specifically including the Affected Vehicles.

33.     The 360-Degree Camera system is only available, in most cases, as an additional upgrade, at an additional cost, or as part of certain premium, more expensive packages on the Affected Vehicles.

34.     The 360-Degree Camera system is intended to permit the operator of a vehicle not only to see behind the vehicle – as with a rear-view camera – but also on the front and sides of the vehicle (i.e., 360 degrees around the vehicle).

35.     Indeed, Ford extolls the benefits of its 360-Degree Camera system as an additional selling point and an added safety and convenience feature of the Affected Vehicles.

36.     For example, with respect to the Lincoln Aviators purchased by Plaintiffs, Ford states:

> **AVAILABLE 360-DEGREE CAMERA**
>
> **Get a bird's-eye view on keeping you confident behind the wheel. A series of cameras captures your surroundings and merges the scenes to give you a 360-degree view of the areas surrounding the vehicle.**[2]

37.     With respect to the Lincoln Corsair, Ford advertises:

---

[2] See https://www.lincoln.com/luxury-suvs/aviator/features/technology/?intcmp=vhp-featcta-technology (last accessed 10/25/23).

**360-DEGREE CAMERA**

**A clear vision created through a holistic view. Expand your sight with a series of built-in cameras that provide a bird's-eye view around the vehicle. The available 360-Degree Camera system also offers a front or rear view, and a front/rear split view showing what is in front of or behind the vehicle along with views showing cross traffic. All the views are accessed with a simple press of a button for enhanced awareness to make sure that most maneuvers are free of obstacles.**[3]

38.     Certain of Defendant's customers, including Plaintiffs and the class, are willing to – and in fact did – pay extra for the 360-Degree Camera system and its features, which were expected to provide an added level of safety and security not only to the customer, but also to their passengers, to other drivers and their passengers, and to pedestrians; at least when the 360-Degree Camera system functions as it is designed and was advertised to do.

39.     Unfortunately, the 360-Degree Camera systems on the Affected Vehicles do <u>not</u> function as designed and advertised, or as promised by Ford when the Affected Vehicles were marketed, advertised, and sold or leased to Plaintiffs and the class.

40.     Rather, the defective 360-Degree Camera systems on the Affected Vehicles routinely and regularly fail, resulting in a total loss of the rear camera image and displaying instead a blank screen or a blue or black image.  This defect leaves the vehicle operator with no functional rear-view camera and renders the 360-Degree Camera feature useless, increasing the likelihood of a crash and the risk of harm not only to the driver and passengers of the Affected Vehicles, but also to other drivers and their passengers as well as pedestrians.

41.     Ford was aware, or should have been aware, of the Defective Cameras at its design and testing stage, long before the Affected Vehicles were manufactured, marketed, and sold or leased to Plaintiffs and the class.  At the very latest, Ford was in fact aware of the

---

[3] See https://www.lincoln.com/luxury-suvs/corsair/features/technology/?intcmp=performance-featcta-technology (last accessed 10/25/23).

Defective Cameras by mid-2020, as there were multiple complaints to NHTSA about the Defective Cameras in the Affected Vehicles by that time.

42.     These complaints, inter alia, reported blank, blue, or black screens in the Affected Vehicles while reversing, and/or non-functioning 360-Degree Camera systems.

43.     In or around March 2021, Ford opened a formal investigation concerning the Defective Cameras in the Affected Vehicles.  At that point, 359 warranty claims had been made relating to Defective Cameras in the Affected Vehicles.  See Attachment D, 9/23/21 Part 573 Safety Recall Report 21V-735.

44.     By August 2021, the number of Defective Camera warranty claims for the Affected Vehicles had increased to 1,867, with higher failure rates in Affected Vehicles that were more than 18 months old.  See id.

45.     By September 15, 2021, Ford was aware of two reported crashes involving the Affected Vehicles that were caused by or related to the Defective Cameras.  See id.

46.     On September 23, 2021, Ford issued the first of its three recalls regarding the Defective Cameras in the Affected Vehicles.  Safety Recall 21S44 covered 2020-2021 Ford Explorers, Lincoln Aviators, and Lincoln Corsairs with 360-Degree Camera systems.  The first recall acknowledged that **"an issue"** with the cameras **"may cause"** the video feed from **"one or more"** cameras to fail to feed into the display screen when the vehicle is shifted into reverse, resulting in the screen displaying a **"blue screen."**  The recall notice warned that **"[t]he loss of the rear camera image during a reverse action increases the risk of crash."**  See Attachment A, 11/20/21 Memorandum from Ford to Dealers regarding Safety Recall 21S44.

47.     Ford's proposed "fix" for the Defective Cameras in the Affected Vehicles was a software update to the image processing module B ("IPMB").  Owners and lessees were

instructed to bring their Affected Vehicles to an authorized Ford dealership for the software update to be performed.  See id.

48.     On November 10, 2021, Ford announced an **"issue"** with the software update used with Safety Recall 21S44, as problems with the Defective Cameras in the Affected Vehicles persisted even after the software update.  Consequently, Ford made **"corrections"** to the update and specified that **"certain vehicles that had 21S44 completed will need to be reprogramed again."**  See id.

49.     In or around March 2022, Ford opened a second formal investigation regarding the Defective Cameras, as it had received multiple reports that the Defective Cameras continued to display a blue or blank screen even after the "corrected" software update, as well as in Affected Vehicles that had been manufactured and sold or leased after the first recall.  See Attachment E, 1/23/23 Chronology regarding FSA 23S02.

50.     By November 30, 2022, Ford had received 2,115 warranty claims related to the Defective Camera issue in Affected Vehicles with the updated software.  See id.

51.     By January 5, 2023, Ford was aware of 17 reported crashes involving the Affected Vehicles that were caused by the malfunctioning Defective Cameras.  See id.

52.     On January 23, 2023, Ford issued its second of three recalls regarding the Defective Cameras.  NHTSA Safety Recall 23V-022 (Manufacturer Recall 23S02) covered 382,759 Affected Vehicles with 360-Degree Camera systems, including 279,700 2020-2023 Ford Explorers; 72,699 2020-2023 Lincoln Aviators; and 30,360 2020-2022 Lincoln Corsairs. The second recall concerned the same issue as the first – that the 360-Degree cameras **"may fail to feed"** the display screen when the vehicle is shifted into reverse, resulting in a **"blue image."** See Attachment B, Part 573 Safety Recall Report 23V-022, dated 1/23/23.

53.     The second recall notice acknowledged that **"[o]nce present, the issue will likely reoccur on the same camera(s) intermittently."**  The second recall notice further warned: **"Loss of rear camera image while reversing increases the risk of a crash."**  See id.

54.     Again, Ford's proposed "fix" for the Defective Cameras in the Affected Vehicles was another software update to the IPMB.  Owners and lessees were again instructed to bring their Affected Vehicles to an authorized Ford dealership for the new software update to be performed.  See id.

55.     Less than four months later, on May 12, 2023, Ford issued its third and most recent recall regarding the Defective Cameras.  NHTSA Safety Recall 23V-342 (Manufacturer Recall 23S23) covered 422,201 Affected Vehicles with 360-Degree Camera systems, including 311,451 2020-2023 Ford Explorers; 80,310 2020-2023 Lincoln Aviators; and 30,434 2020-2022 Lincoln Corsairs.  The third recall concerned the same issue as the first two recalls – that the 360-Degree Cameras fail when the Affected Vehicles are placed in reverse, resulting in a blue, black, or blank screen.  See Attachment C, Part 573 Safety Recall Report 23V-342, dated 5/12/23.

56.     Unlike its first two recalls, Ford's third recall of the Affected Vehicles for the Defective Screen issue does not propose any "fix" for the defect.  Rather, it merely states, **"The root cause for the loss of video frames is still unknown and under investigation."**  Id. (further stating, **"The remedy is under development.  Root cause is unknown."**).

57.     The recall further provides: "**When a remedy is available, owners will be notified by mail and instructed to take their vehicle to a Ford or Lincoln dealer to have the remedy performed on their vehicle."**  Id.

58.     Ford's third recall notice again warns that the **"[l]oss of rear camera image while reversing increases the risk of a crash."** Id.  Despite this warning, however, Ford fails to provide any remedy for its Defective Cameras in the Affected Vehicles, and has yet to do so.

59.     In a recent communication to Plaintiffs and the class, Ford acknowledged that:

- **"[A] defect which relates to motor vehicle safety exists"** in the Affected Vehicles belonging to Plaintiffs and the class;

- Even after the software update provided by its first two recalls, **"it may still be possible to intermittently experience a rear camera blue image on the SYNC screen when the vehicle is placed in reverse"**;

- **"Once present, the issue is likely to reoccur on subsequent key cycles"**;

- Ford **"is working on a service fix"** (i.e., no fix is yet available); and

- **"The loss of the rear camera image during a reverse action increases the risk of a crash."**

See Attachment F, 4/23 Correspondence from Defendant to Lincoln Owners regarding Important Safety Recall 23S02/NHTSA Recall 23V022.

60.     Despite the foregoing, Ford has still not provided any fix for the Defective Cameras in the Affected Vehicles, nor has it indicated when any such fix might be forthcoming.

61.     Until a fix becomes available, Ford has informed Plaintiffs and the class that the reverse image **"may"** be restored by shifting the vehicle into park, shutting off the vehicle, restarting, and shifting back into reverse.  Id.  But such a cumbersome process is not always possible, and indeed may increase the risk of crash or injury, for example, if the car is being backed into a busy street or heavily-trafficked pedestrian area.

62.     Notably, Ford has not instructed Plaintiffs and the class to stop driving their Affected Vehicles, even though the Affected Vehicles – all of which are 3 years old or less and remain covered under Ford's New Vehicle Limited Warranty – currently do not comply with the

federal requirement of a rear-view camera, and even though Ford has repeatedly warned that the lack of a rear camera image **"increases the risk of a crash."**  See id.

63.     Consequently, Plaintiffs and the class are forced to continue to drive their new or newer Affected Vehicles without this crucial, federally-mandated safety feature, placing themselves, their passengers, pedestrians, and other drivers and passengers at risk of crash, physical injury, and/or death.

64.     Ford designed, manufactured, advertised, marketed, and sold or leased the Affected Vehicles to Plaintiffs and the class with the Defective Cameras, and moreover failed to disclose the existence of the Defective Cameras to Plaintiffs and the class, despite knowing that the defects complained-of herein existed.

65.     Moreover, despite being legally responsible for repairing or replacing the Defective Cameras, both under the law and under its own New Vehicle Limited Warranty that it issued for the Affected Vehicles, Ford has neglected to fix the Defective Cameras or to even develop a fix for the Defective Cameras, even though Plaintiffs and the class paid a premium for this upgraded option and have sought repair on numerous occasions.

66.     What happened to Plaintiffs helps illustrate Ford's unlawful conduct.

**Plaintiff Gabriel Shiff**

67.     Plaintiff Gabriel Shiff has leased two Affected Vehicles during the class period: a 2021 Lincoln Aviator and a 2023 Lincoln Aviator.  Both Affected Vehicles were leased from Lincoln of Englewood, an authorized Lincoln dealer located at 186 Engle Street, Englewood, New Jersey 07631.

68.     Each of the Affected Vehicles leased by Plaintiff Shiff was equipped with a 360-Degree Camera.

69.     Prior to leasing his 2021 Lincoln Aviator, Plaintiff Shiff had leased a 2019 Lincoln Aviator, which also was equipped with a 360-Degree Camera.  Plaintiff was thus familiar with the features, characteristics, and benefits of the 360-Degree Camera in the Lincoln Aviator.  Plaintiff experienced no problems with the 360-Degree Camera in his 2019 Lincoln Aviator.

70.     When the lease on Plaintiff Shiff's 2019 Lincoln Aviator expired, Plaintiff visited Defendant's authorized dealership to look at the new 2021 Lincoln Aviator.  While at the dealership, Plaintiff viewed the new 2021 Lincoln Aviator and spoke with several sales representatives about the 2021 Lincoln Aviator and its features, including the 360-Degree Camera system.  Neither Ford's marketing materials nor the sales representatives mentioned or disclosed the Defective Camera to Plaintiff, despite the fact that Defendant was aware of hundreds of warranty claims relating to the Defective Cameras prior to Plaintiff's lease.

71.     The 360-Degree Camera system was a significant factor in Plaintiff Shiff's decision to lease the 2021 Lincoln Aviator.  Safety was, and continues to be, a priority in Plaintiff's choice of vehicles.  Plaintiff specifically sought out a vehicle with a 360-Degree Camera system, and he would not have leased – or even considered leasing – a 2021 Lincoln Aviator if it did not have a 360-Degree Camera, let alone no functioning rear-view camera at all.  Nor would Plaintiff have leased the 2021 Lincoln Aviator had he known or been informed by Defendant that that the vehicle's 360-Degree Camera was defective and/or frequently malfunctioned.

72.     Plaintiff Shiff first experienced the complained-of defect in his 2021 Lincoln Aviator – the failure of his 360-Degree Camera system – within the first year after he leased the

Affected Vehicle.  Plaintiff shifted his vehicle into reverse and the screen turned black, with no rear-view image present on the display screen.

73.     Plaintiff Shiff immediately sought repair of the defect at his local authorized dealership.  When the vehicle was returned to Plaintiff, he was informed by the dealership that the Defective Camera was repaired, but in fact it was not.

74.     Eventually, Plaintiff Shiff turned in his 2021 Lincoln Aviator and leased a new, 2023 Lincoln Aviator.  At the time Plaintiff leased his new 2023 Lincoln Aviator, he did not know, and was never informed by Defendant, that his new vehicle suffered from the same defect as his old one – i.e., a Defective Camera that displays a blue or black screen rather than the rearview image when the vehicle is placed in reverse – even though at that time Defendant was aware of at least 2,000 warranty claims and 17 crashes related to the Defective Camera issue.

75.     Over the course of his ownership of the two Affected Vehicles, Plaintiff Shiff has received multiple recall notices from Defendant regarding the Defective Cameras, and he has sought repair of the Defective Cameras on multiple occasions at his local authorized dealership. Defendant has failed to repair the Defective Cameras on Plaintiff's Affected Vehicles, however.

76.     Most recently, Plaintiff Shiff was told that an interim repair should be ready by August 2023, but to date the Defective Camera on Plaintiff's current Affected Vehicle still has not been repaired.  Nor has Defendant provided any date by which a permanent repair for the Defective Camera in the Affected Vehicles might be available.

77.     Plaintiff Shiff's current Affected Vehicle is less than one year old and remains under factory warranty.  Although Plaintiff Shiff has not yet experienced the camera defect in his current Affected Vehicle (the 2023 Lincoln Aviator), he has received multiple recall notices for the Defective Camera and thus is frequently apprehensive when driving the vehicle and

concerned that the Defective Camera will malfunction, causing him to crash the vehicle and injure himself or others while driving the vehicle in reverse as a result of the Defective Camera.

**Plaintiff Robert Sonsini**

78.     On or about August 2, 2021, Plaintiff Robert Sonsini purchased a new 2021 Lincoln Aviator, VIN 5LM5J7XC6MGL17329, from Chapman Ford Sales, Inc., an authorized Ford and Lincoln dealer located at 6740-6744-6750 Black Horse Pike, Egg Harbor Twp., New Jersey 08234.

79.     Plaintiff Sonsini's 2021 Lincoln Aviator is equipped with a 360-Degree Camera.

80.     Prior to purchasing his 2021 Lincoln Aviator, Plaintiff Sonsini researched the vehicle at Defendant's authorized dealership and spoke with several sales representatives about the vehicle and its features, including the 360-Degree Camera system.  Neither Ford's marketing materials nor the sales representatives mentioned or disclosed the Defective Camera to Plaintiff Sonsini, despite the fact that Defendant was aware of hundreds of warranty claims relating to the Defective Cameras prior to Plaintiff's purchase.

81.     The 360-Degree Camera system was a primary basis for Plaintiff Sonsini's decision to purchase a 2021 Lincoln Aviator.  Safety was, and continues to be, a priority in Plaintiff Sonsini's choice of vehicles.  Plaintiff Sonsini specifically sought out a vehicle with a 360-Degree Camera system, and he would not have purchased – or even considered purchasing – a 2021 Lincoln Aviator if it did not have a 360-Degree Camera, let alone no functioning rear-view camera at all.  Nor would Plaintiff Sonsini have purchased the 2021 Lincoln Aviator had he known or been informed by Defendant that that the vehicle's 360-Degree Camera was defective and/or frequently malfunctioned.

82.    Indeed, the reason for Plaintiff Sonsini's visit to Ford's authorized dealership on the day that he purchased his 2021 Lincoln Aviator was in part to resolve a malfunctioning camera issue on his then-current vehicle.  Plaintiff Sonsini ended up trading in that vehicle with a malfunctioning camera for the new 2021 Lincoln Aviator.

83.    Plaintiff Sonsini first experienced the complained-of defect – the failure of his 360-Degree Camera system – within a few weeks after he first purchased his Affected Vehicle. Plaintiff shifted his vehicle into reverse and the screen turned black, with no rear-view image present on the display screen.

84.    Plaintiff Sonsini immediately sought repair of the defect at his local authorized dealership.  When the vehicle was returned to Plaintiff, he was informed by the dealership that the Defective Camera was repaired, but in fact it was not.

85.    Rather, Plaintiff Sonsini has received multiple recall notices regarding the Defective Cameras, and has sought repair of the defect on multiple occasions at his local authorized dealership.  Defendant has failed to repair the Defective Camera on Plaintiff's Affected Vehicle, however.

86.    Most recently, Plaintiff Sonsini was told that an interim repair should be ready by August 2023, but to date the Defective Camera on Plaintiff's Affected Vehicle still has not been repaired.  Defendant still has not provided any date by which a permanent repair for the Defective Camera in the Affected Vehicles might be available.

87.    Plaintiff Sonsini's Affected Vehicle is just over two years old, currently has only 27,000 miles, and remains under factory warranty.  The complained-of defect in Plaintiff's 360-Degree Camera has been present for nearly the entire time he has owned the Affected Vehicle.

88.     Due to safety concerns caused by the malfunctioning Defective Camera, Plaintiff Sonsini is frequently apprehensive about driving his Affected Vehicle.

89.     Nevertheless, Plaintiff Sonsini is forced to drive his Affected Vehicle with the Defective Camera.  When driving the vehicle, Plaintiff is constantly concerned that the Defective Camera will malfunction, causing him to crash the vehicle and injure himself or others while driving the vehicle in reverse as a result of the Defective Camera.

*     *     *

90.     What happened to Plaintiffs was not an accident or an isolated incident.

91.     Rather, it was the result of unlawful actions by Defendant Ford, in which Ford: defectively designed, manufactured, and installed the Defective Cameras in the Affected Vehicles; falsely and deceptively marketed, advertised, and sold or leased the Affected Vehicles with the Defective Cameras to Plaintiffs and the class; failed to disclose the existence of the Defective Cameras to Plaintiffs and the class before or at the time they purchased the Affected Vehicles; and failed to repair the Defective Cameras.

92.     Ford knew or should have known about the Defective Cameras long before it marketed, advertised, and sold or leased the Affected Vehicles to Plaintiffs and the class.

93.     Moreover, Ford should have informed Plaintiffs and the class about the Defective Cameras before or at the time it marketed, advertised, and sold or leased the Affected Vehicles to Plaintiffs and the class.

94.     Had Plaintiffs and the class known that the Affected Vehicles were equipped with Defective Cameras, they would not have purchased or leased said vehicles, would not have paid as much as they paid for the Affected Vehicles, and/or would have purchased vehicles with the cheaper, standard rear-view camera.

95.     Indeed, Plaintiffs and the class would have been better off with the standard rear-view camera, which costs far less than the Defective Cameras and, by all accounts, functions consistently and does not suffer from any intrinsic defect.

96.     Ford has a current and ongoing responsibility to repair or replace the Defective Cameras in the Affected Vehicles, both under the law and under its New Vehicle Limited Warranty.

97.     Plaintiffs and the class have requested that Ford repair or replace the Defective Cameras in their Affected Vehicles.

98.     Despite this, Ford has thus far failed, and continues to fail, to comply with its legal and contractual obligations to repair or replace the Defective Cameras.

99.     Indeed, it is unclear when or if such repair or replacement will be forthcoming, as Ford claims that it is still **"working on a service fix."**  <u>See</u> Attachment F, 4/23 Correspondence from Defendant to Plaintiffs regarding Important Safety Recall 23S02/NHTSA Recall 23V022.

100.    Moreover, despite having been told that an interim fix would be available in August 2023, the Defective Cameras in Plaintiffs' Affected Vehicles still have not been repaired or replaced.  Moreover, Ford still has not provided any anticipated date on which a permanent fix for the Defective Cameras will be available.

101.    Due to Ford's continued failure to satisfy its obligation to repair or replace the Defective Cameras in the Affected Vehicles, Plaintiffs and the class are forced to continue to drive their new or newer Affected Vehicles without a functioning federally-mandated rearview camera, placing themselves, their passengers, pedestrians, and other drivers and passengers at an increased risk of crash, property damage, personal injury, and/or death.

102.    At bottom, Ford knowingly sold a defective product to Plaintiffs and the class, without disclosing such defect, and now refuses to provide any remedy, repair, replacement, or restitution for its actions.

103.    As a result of Ford's unlawful conduct, Plaintiffs and the class have suffered damages and harm as set forth herein, including but not limited to the loss of value and use of their Affected Vehicles and consequential damages.

104.    Defendant's conduct alleged herein constitutes an omission of material fact and a deceptive business practice in violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq.; constitutes a breach of warranty, breach of contract, and a breach of the duty of good faith and fair dealing that is part of the contract for the sale of items between Defendant and each of its customers; and, alternatively, constitutes unjust enrichment.

## <u>CLASS ALLEGATIONS</u>

105.    Plaintiffs brings this lawsuit as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

106.    Plaintiffs seek certification of the following class:

> **All persons who, within the applicable limitations period, purchased or leased in New Jersey one or more of the following vehicles equipped with a 360-Degree Camera system:  a 2020-2023 Ford Explorer, a 2020-2023 Lincoln Aviator, and/or a 2020-2022 Lincoln Corsair (the "Affected Vehicles").**

107.    This Court should apply the discovery rule to extend any applicable limitations period (and the corresponding Class period) to cover all sales of the Affected Vehicles.  The Camera Defects were known to Defendant, but were non-obvious to and intentionally concealed from Plaintiffs and the class.  As a result of Defendant's intentional misconduct, omissions, and affirmative misrepresentations in the marketing, advertising, and sale or lease of the Affected Vehicles, neither Plaintiffs nor the class members could have, through the use of reasonable

diligence, learned of the Camera Defects or the accrual of their claims against Defendant at an earlier time.

108.    Specifically excluded from the proposed class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

109.    **Numerosity.**  The members of the class are so numerous that joinder of all members would be impracticable.  While Plaintiffs do not know the exact number of class members prior to discovery, upon information and belief, there are at least 5,000 members in the proposed statewide class.  The exact number and identities of class members are contained in Defendant's records and can be easily ascertained from those records.

110.    **Commonality and Predominance.**  All claims in this action arise exclusively from the uniform policies and procedures of Defendant as outlined herein.  This action involves multiple common questions which are capable of generating class-wide answers that will drive the resolution of this case.  These common questions predominate over questions affecting individual class members, if any.  These common questions include, but are not limited to, the following:

a.      Whether Defendant's actions alleged herein occurred;

b.      Whether the 360-Degree Cameras described herein are defective;

c.      Whether Defendant is required to repair or replace the Defective Cameras;

d.      Whether Defendant has refused to repair or replace the Defective Cameras;

e.      Whether Defendant knew about the Defective Cameras when it marketed and advertised the Affected Vehicles to Plaintiffs and the class;

f.       Whether Defendant knew about the Defective Cameras when it sold or leased the Affected Vehicles to Plaintiffs and the class;

g.       Whether Defendant failed to disclose the Defective Cameras to Plaintiffs and the Class;

h.       Whether Defendant's conduct was a violation of the New Jersey Consumer Fraud Act;

i.       Whether Defendant's conduct constituted a breach of contract and/or warranties under New Jersey law;

j.       Whether Defendant's continued refusal to repair or replace the Defective Cameras constitutes a continued, ongoing breach of contract and warranty under New Jersey law;

k.       Whether Defendant's conduct constituted a breach of the implied covenant of good faith and fair dealing under New Jersey law;

l.        Whether Plaintiffs and the class are entitled to injunctive relief in the form of an order establishing a Court-administered program to provide refunds, repairs, replacement, and/or restitution with respect to the Defective Cameras; and

m.       Whether Defendant was unjustly enriched from its sale and lease of the Affected Vehicles outfitted with Defective Cameras to Plaintiffs and the class.

111.    **Typicality.**  Plaintiffs, like all class members, purchased or leased one or more of the Affected Vehicles equipped with a defective 360-Degree Camera system:  a 2020-2023 Ford Explorer, a 2020-2023 Lincoln Aviator, and/or a 2020-2022 Lincoln Corsair.  Plaintiffs' claims all arise from the same course of conduct by Defendant, are based on the same legal theories, and face the same potential defenses as those of the class.  Plaintiffs' claims are typical of all class

members' claims.  Plaintiffs are members of the class they seek to represent.  All claims of Plaintiffs and the class arise from the same course of conduct, policy, and procedures as outlined herein.

112.  **Adequacy**. Plaintiffs and their counsel will fairly and adequately protect class members' interests.  Plaintiffs seek the same relief for themselves as for every other class member, have no interests antagonistic to class members' interests, and are committed to representing the best interests of the class.  Moreover, Plaintiffs have retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

113.  **Superiority**. A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy.  Each class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for class members to seek individual redress for Defendant's conduct.  Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system.  Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct by Defendant.  A single adjudication would create economies of scale and comprehensive supervision by a single judge.  Moreover, Plaintiffs do not anticipate any difficulties in managing a class action trial in this case.

114.  By its conduct and omissions alleged herein, Defendant has acted and refused to act on grounds that apply generally to the class, such that final injunctive relief and/or declaratory relief is appropriate respecting the class as a whole.

115.    Without the proposed class action, Defendant will likely retain the benefits of its wrongdoing and will continue the complained-of practices, which will result in further damages to Plaintiffs and class members.

## CLAIMS FOR RELIEF

## COUNT I

## Violation of the New Jersey Consumer Fraud Act
## N.J.S.A. § 56:8-1, et seq.

116.    Plaintiffs incorporate all preceding paragraphs of this complaint as if set forth fully herein.

117.    This action does not raise any claims of common law fraud.

118.    Rather, the claims in this count arise exclusively against Defendant under the CFA.

119.    The New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq. (the "CFA"), was enacted to protect consumers against sharp and unconscionable commercial practices by persons engaged in the sale of goods or services. See Marascio v. Campanella, 689 A.2d 852, 857 (N.J. Ct. App. 1997).

120.    The CFA is a remedial statute which the New Jersey Supreme Court has repeatedly held must be construed liberally in favor of the consumer to accomplish its deterrent and protective purposes. See Furst v. Einstein Moomjy, Inc., 860 A.2d 435, 441 (N.J. 2004) **("The [CFA] is remedial legislation that we construe liberally to accomplish its broad purpose of safeguarding the public.")**.

121.    Indeed, **"[t]he available legislative history demonstrates that the [CFA] was intended to be one of the strongest consumer protection laws in the nation."** New Mea Const. Corp. v. Harper, 497 A.2d 534, 543 (N.J. Ct. App. 1985).

122.    For this reason, the **"history of the [CFA] is one of constant expansion of consumer protection."** Kavky v. Herbalife Int'l of Am., 820 A.2d 677, 681-82 (N.J. Ct. App. 2003).

123.    The CFA was intended to protect consumers **"by eliminating sharp practices and dealings in the marketing of merchandise and real estate."** Lemelledo v. Beneficial Mgmt. Corp., 696 A.2d 546, 550 (N.J. 1997).

124.    Specifically, N.J.S.A. § 56:8-2 prohibits "unlawful practices" which are defined as:

> **"The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission … whether or not any person has in fact been misled, deceived or damaged thereby …"**

125.    The catch-all term **"unconscionable commercial practice"** was added to the CFA by amendment in 1971 to ensure that the CFA covered, inter alia, **"incomplete disclosures."** Skeer v. EMK Motors, Inc., 455 A.2d 508, 512 (N.J. Ct. App. 1982).

126.    In describing what constitutes an **"unconscionable commercial practice,"** the New Jersey Supreme Court has noted that it is an amorphous concept designed to establish a broad business ethic. See Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994).

127.    In order to state a cause of action under the CFA, a plaintiffs does not need to show reliance by the consumer.  See Varacallo v. Massachusetts Mut. Life Ins. Co., 752 A.2d 807 (N.J. App. Div. 2000); Gennari v. Weichert Co. Realtors, 691 A.2d 350 (N.J. 1997) (holding that reliance is not required in suits under the NJCFA because liability results from **"misrepresentations whether 'any person has in fact been misled, deceived or damaged thereby"**).

128. As stated by the New Jersey Supreme Court in <u>Lee v. Carter-Reed Co., L.L.C.</u>, 4 A.3d 561, 580 (N.J. 2010): **"It bears repeating that the [NJCFA] does not require proof of reliance, but only a causal connection between the unlawful practice and ascertainable loss."**

129. It is also not required that an affirmative statement be literally false in order to be considered deceptive and misleading under the CFA. Even a statement which is literally true can be misleading and deceptive in violation of the CFA. See <u>Smajlaj v. Campbell Soup Co.</u>, 782 F. Supp. 2d 84, 98 (D.N.J. 2011) (upholding a NJCFA claim where the defendant argued its written statement was literally true, holding **"the fact that the labels were literally true does not mean they cannot be misleading to the average consumer."**).

130. A CFA violation also does not require that the merchant be aware of the falsity of the statement or that the merchant act with an intent to deceive. See <u>Gennari v. Weichert Co. Realtors</u>, 691 A.2d 350, 365 (N.J. 1997):

> **"One who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive… An intent to deceive is not a prerequisite to the imposition of liability."**

131. Nor is it a defense to a CFA claim that the merchant acted in good faith. See <u>Cox v. Sears Roebuck & Co.</u>, 647 A.2d 454, 461 (N.J. 1994) (**"the Act [CFA] is designed to protect the public even when a merchant acts in good faith."**).

132. Defendant here is a "person" within the meaning of N.J.S.A. § 56:8-1(d).

133. The Affected Vehicles are "merchandise" within the meaning of N.J.S.A. § 56:8-1(c).

134. Defendant's conduct described herein constitutes deceptive, misleading, and/or unconscionable commercial practices in the sale of goods in violation of N.J.S.A. § 56:8-2.

135.     Such conduct includes, inter alia, affirmative misrepresentations, material nondisclosures, and material omissions of facts known by Defendant, as well as violation of a federal requirement prohibiting the conduct alleged herein.

136.     Specifically, Defendant marketed, advertised, and sold or leased to Plaintiffs and each class member an Affected Vehicle with a Defective Camera, without disclosing said defect before or at the time of sale.  The existence of the Defective Camera in the Affected Vehicles was a fact material to the sale or lease of such vehicles to Plaintiffs and the class.  Moreover, as set forth herein, Defendant touted the benefits of the 360-Degree Camera system in its marketing materials and advertisements, on its website, and through its sales representatives, when the cameras are in fact defective and do not consistently produce the advertised benefits.

137.     Although not required by the CFA, Defendant was aware of the Defective Cameras in the Affected Vehicles before or at the time said vehicles were sold or leased to Plaintiffs and the class.  Despite this, Defendant failed to disclose such defect to Plaintiffs and the class, which failure constituted a knowing omission of material fact and an unconscionable business practice.

138.     Additionally, the defect in the Cameras render the Affected Vehicles noncompliant with the federal mandate that all vehicles manufactured since May 2018 be equipped with a functioning rearview camera.

139.     Further, Defendant has failed to repair the Defective Cameras in the Affected Vehicles, and has failed to comply with its own warranty issued for such vehicles.

140.     Plaintiffs and the class reasonably and justifiably expected and relied on Defendant, inter alia, to sell and lease vehicles absent of defects, to accurately market and advertise its vehicles and their features, to disclose all defects, to comply with applicable law and

its own warranty, to repair any defects as required by law and its manufacturer's warranty, and otherwise to act lawfully.  Plaintiffs and the class specifically relied on Defendant to disclose in connection with the sale or lease of new vehicles all defects present in such vehicles, and such reliance was reasonable due to Defendant's status as a for-profit retail business enterprise.

141.    As a proximate result of Defendant's conduct described herein, Plaintiffs and the class have suffered an ascertainable loss of money and property in an amount to be established at trial.

## COUNT II

### Breach of Contract

142.    Plaintiffs incorporate all preceding paragraphs of this complaint as if set forth fully herein.

143.    Plaintiffs and the class entered into express contracts with Defendant.

144.    The contracts provided that Defendant would sell or lease a vehicle to Plaintiffs and each class member in exchange for a specified monetary amount.

145.    The contracts further provided that the vehicles would be fully operational and free from known defects, and that Defendant would repair any unknown defects that arose, or replace any defective parts, within the warranty period.

146.    Plaintiffs and the class paid Defendant for the vehicles they purchased or leased, and satisfied all other conditions of the contracts.

147.    Defendant breached its contracts with Plaintiffs and the class members, inter alia, by selling or leasing to Plaintiffs and the class vehicles with Defective Cameras, and by failing to repair or replace such Defective Cameras under the applicable warranty.

148.     As a direct and proximate result of Defendant's breach, Plaintiffs and the class have been injured and have suffered actual damages in an amount to be established at trial.

## COUNT III

### Breach of Implied Contract for Violation of the Implied Duty of Good Faith and Fair Dealing

149.     Plaintiffs incorporate all preceding paragraphs of this complaint as if set forth fully herein.

150.     There existed an express contract for the sale or lease of merchandise between Defendant and each class member.

151.     By operation of New Jersey law, there also existed an implied duty of good faith and fair dealing in each such contract.

152.     By the acts alleged herein, Defendant has violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendant and each class member.

153.     Specifically, it was a violation of the duty of good faith and fair dealing for Defendant, inter alia, to sell or lease the Affected Vehicles to Plaintiffs and the class with the Defective Cameras, to fail to disclose the Defective Cameras prior to or at the time of purchase, and to refuse to repair or replace the Defective Cameras under Defendant's warranty or otherwise.

154.     Defendant continues to breach the duty of good faith and fair dealing by refusing to repair or replace the Defective Cameras on the Affected Vehicles of Plaintiffs and the class.

155.     As a result of Defendant's breach, Plaintiffs and each class member have suffered damages in an amount to be established at trial.

## COUNT IV

### Breach of Express Warranty

156.     Plaintiffs incorporate all preceding paragraphs of this complaint as if set forth fully herein.

157.     Each Affected Vehicle purchased by Plaintiffs and the class was accompanied by an express warranty, i.e., Defendant's "New Vehicle Limited Warranty."

158.     As set forth herein, this express warranty requires Defendant, inter alia, to repair or replace any and all defective parts on the Affected Vehicles that fail within the coverage period, including the Defective Cameras at issue in this lawsuit.

159.     All conditions precedent to Defendant's liability under this express warranty have been fulfilled by Plaintiffs and the class in terms of paying for the goods at issue and providing notice of the Defective Cameras to Defendant, or have been waived.  Defendant has actual and/or constructive notice of the Defective Cameras, but to date has taken no action to remedy such defects.

160.     By failing to repair or replace the Defective Cameras in the Affected Vehicles, Defendant has breached the terms of its express warranty.

161.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs and the Class members have been injured and have suffered actual damages in an amount to be established at trial.

## COUNT V

### Breach of Implied Warranty of Merchantability and Fitness for a Particular Purpose

162.     Plaintiffs incorporate all preceding paragraphs of this complaint as if set forth fully herein.

163.    By operation of law, the Affected Vehicles and their component parts, specifically including the Defective Cameras, were covered by the implied warranty of merchantability and fitness for a particular purpose, which means that they must be fit for their ordinary and intended purposes and use.

164.    By the facts alleged herein, Defendant's Defective Cameras are not fit for their ordinary or intended use.

165.    Indeed, the fact that Defendant's Defective Cameras frequently and routinely glitch or malfunction, resulting in the loss of the camera image and a blank, black, or blue screen, render them unable to work or function as intended.

166.    Plaintiffs and the class reasonably expected that upgraded, premium cameras designed, manufactured, installed and/or approved for a use on a new or newer vehicle would not regularly glitch or malfunction.

167.    Consequently, Defendant has breached the implied warranties of merchantability and fitness for a particular purpose as to the Defective Cameras.

168.    Moreover, Defendant continues to breach the implied warranties of merchantability and fitness for a particular purpose because it refuses to repair or replace its Defective Cameras.

169.    All conditions precedent to Defendant's liability under the implied warranties of merchantability and fitness for a particular purpose have been fulfilled by Plaintiffs and the class members or have been waived, in that, inter alia, Plaintiffs and the class members have paid for the Defective Cameras, have provided Defendant with notice of the Defective Cameras, and have sought relief from Defendant, but Defendant has refused to repair or replace the Defective Cameras.

170.     As a direct and proximate result of Defendant's breach of the implied warranties of merchantability and fitness for a particular purpose, Plaintiffs and the class members have been injured and have suffered actual damages in an amount to be established at trial.

## COUNT VI
## Unjust Enrichment/Disgorgement

171.     Plaintiffs incorporate all preceding paragraphs of this complaint as if set forth fully herein.

172.     This claim is alleged in the alternative to Plaintiffs' claims for money damages and breach of contract claims.

173.     By the acts alleged herein, Defendant received a benefit from Plaintiffs and the class members, in the form of monies paid to Defendant by Plaintiffs and the class members for the purchase and/or lease of the Affected Vehicles and for the upgraded and optional 360-Degree Cameras.

174.     The retention of that benefit by Defendant would be unjust because, inter alia, Defendant designed, manufactured, and installed Defective Cameras in the Affected Vehicles; marketed, advertised, and sold or leased such vehicles containing the Defective Cameras to Plaintiffs and the class; and failed to disclose the existence of the Defective Cameras to Plaintiffs and the class until long after the sales and/or lease of the Affected Vehicles.

175.     By the facts alleged herein, equity demands that Defendant disgorges itself of this benefit and that the benefit be returned to Plaintiffs and the class.

## COUNT VII

### New Jersey Uniform Declaratory Judgments Act
### N.J.S.A. § 2A:16-51, et seq.

176.    Plaintiffs incorporate all preceding paragraphs of this complaint as if set forth fully herein.

177.    Pursuant to the New Jersey Declaratory Judgments Act, N.J.S.A. § 2A:16-51, et seq., Plaintiffs and the class need, and are entitled to, an order for injunctive and declaratory relief:

        a.    Declaring that Defendant's conduct described herein is a violation of New Jersey law;

        b.    Directing Defendant to cease the unlawful practices challenged herein; and

        c.    Establishing a court-administered program to provide refunds, repairs, replacement, and/or restitution to Plaintiffs and the class with respect to the Defective Cameras.

178.    Plaintiffs and the class members have a significant interest in this matter in that each has been, currently is being, and will in the future be subjected to the unlawful policies alleged herein.

179.    Defendant is continuing to engage in the unlawful practices alleged herein.

180.    Each Plaintiffs and class member is a current owner or lessee of one or more Affected Vehicles which are equipped with Defective Cameras.

181.    Based on the foregoing, a justifiable controversy is presented in this case, rendering declaratory judgment and injunctive relief appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Gabriel Shiff and Robert Sonsini, on behalf of themselves and the proposed class, respectfully asks this Court to:

A.      Certify the case as a class action and appoint Plaintiffs and their counsel to represent the class;

B.      Declare that Defendant's conduct alleged herein violate New Jersey law as set forth herein;

C.      Enter an order for injunctive relief against Defendant, establishing, under the Court's equitable powers and at Defendant's expense, a Court-administered program under which Defendant must repair or replace the Defective Cameras on the Affected Vehicles of Plaintiffs and the class;

D.      Retain jurisdiction to monitor Defendant's compliance with the injunctive relief;

E.      Order that the discovery rule applies to extend any applicable limitations periods (and the corresponding class period) for the class to include all sales of Affected Vehicles;

F.      Order disgorgement and/or restitution, including, without limitation, disgorgement of all revenues, profits and/or unjust enrichment that Defendant obtained, directly or indirectly, from Plaintiffs and class members as a result of the unlawful conduct alleged herein;

G.      Enter judgment in favor of Plaintiffs and the class for damages suffered as a result of the conduct alleged herein;

H.      Order Defendant to pay punitive, exemplary, treble, and/or statutory damages to the class under the laws outlined herein;

I.      Order Defendant to pay attorneys' fees and costs to the extent allowed by law;

J.      Order Defendant to pay pre-judgment and post-judgment interest to the extent allowed by law; and

K.      Grant such other and further legal and equitable relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

PLEASE TAKE NOTICE that the Plaintiffs hereby demand a trial by jury on all issues so triable.


Dated:  November 16, 2023            By: _____

DeNITTIS OSEFCHEN PRINCE, P.C.
Stephen P. DeNittis, Esq.
Joseph A. Osefchen, Esq.
Shane T. Prince, Esq.
525 Route 73 North, Suite 410
Marlton, NJ 08053
Telephone: (856) 797-9951
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com
Email: josefchen@denittislaw.com
Email: sprince@denittislaw.com

CRIDEN & LOVE, P.A.
Michael E. Criden, Esq.*
Lindsey C. Grossman, Esq.*
7301 SW 57th Court, Suite 515
South Miami, FL 33143
Telephone: (305) 357-9000
Facsimile: (305) 357-9050
Email: mcriden@cridenlove.com
Email: lgrossman@cridenlove.com
* Pro Hac Vice Application To Be Submitted

*Attorneys for Plaintiffs and the Proposed Class*

# Exhibit A



David J. Johnson
Director
Service Engineering Operations
Ford Customer Service Division

Ford Motor Company
P. O. Box 1904
Dearborn, Michigan 48121

November 10, 2021

**TO:** All U.S. Ford and Lincoln Dealers

**SUBJECT:** **NEW VEHICLE DEMONSTRATION / DELIVERY HOLD -**
**Safety Recall 21S44** *- Supplement #1*
Certain 2020-2021 Model Year Multiple Vehicle Lines with 360 Degree Cameras
Inoperative 360 Degree Cameras with a Blue Screen

**REF:** **SSM:** 49980

**REF:** **NEW VEHICLE DEMONSTRATION / DELIVERY HOLD**
**Safety Recall 21S44**
Dated: September 23, 2021

**REF:** **NEW VEHICLE DEMONSTRATION / DELIVERY HOLD**
**Compliance Recall 21C09**
Dated: May 14, 2021

**New!** *REASON FOR THIS SUPPLEMENT*

- *Notification of software correction: Corrections have been made for Explorer and Corsair vehicles regarding latest IPMB part level.*
- *Service Action: Certain vehicles that had 21S44 or SSM 49980 completed will need to be reprogramed again due to a software issue.*
  - *VINs that have been identified with the old level IPMB software after 21S44 or SSM 49980 was performed have been identified and reopened under 21S44.*
- *All open VINs under 21C09 were closed and will be serviced under 21S44.*
  - *The 21S44 repair will also cover the 21C09 repair with one action.*
  - *Customers will receive a specific owner letter explaining this change.*
- *Attachments:*
  - *Additional Owner Letters depending on vehicle status under 21S44 and/or 21C09.*
- *Owner Notification Mailing Schedule: Date update.*
- *FSA VIN Lists Activation: Owner names and addresses availability date update.*

© Copyright 2021 Ford Motor Company

**AFFECTED VEHICLES**

| Vehicle | Model Year | Assembly Plant | Build Dates |
|---------|-----------|----------------|-------------|
| Aviator | 2020-2021 | Chicago | October 19, 2018 through September 2, 2021 |
| | | Chicago SHO | September 14, 2020 through August 25, 2021 |
| Corsair | 2020-2021 | Louisville | January 7, 2019 through September 7, 2021 |
| Explorer | 2020-2021 | Chicago | October 19, 2018 through September 5, 2021 |
| | | Chicago SHO | September 14, 2020 through September 7, 2021 |

Affected vehicles are identified in OASIS and FSA VIN Lists.

**REASON FOR THIS SAFETY RECALL**

In some of the affected vehicles, an issue within the 360° cameras may cause the video information from one or more of the 360° cameras, including the rear view camera, to fail to feed to the SYNC display screen during some key cycles when the vehicle is shifted into reverse. If this occurs, the SYNC screen will display a blue screen. The issue is intermittent and may recover during subsequent ignition cycles. The loss of the rear camera image during a reverse action increases the risk of crash.

**New!** **SERVICE ACTION**

Before demonstrating or delivering any new in-stock vehicles involved in this recall, dealers are to reprogram the image processing module B (IPMB) using the Ford Diagnostic and Repair System (FDRS). This service must be performed on all affected vehicles at no charge to the vehicle owner.

**NOTE**: Integrated Diagnostic Software (IDS) cannot be used for programming on the 2020-2021 vehicles in this program.

*NOTE: Certain vehicles that had 21S44 completed will need to be reprogramed again due to a software issue.*

- *VINs with old level IPMB software after 21S44 was performed have been identified and reopened under 21S44 in OASIS.*

**New!** **OWNER NOTIFICATION MAILING SCHEDULE**

Owner letters are expected to be mailed the week of *November 15, 2021*. Dealers should repair any affected vehicles that arrive at their dealerships, whether or not the customer has received a letter.

**PLEASE NOTE:**

**Federal law requires dealers to complete this recall service before a new vehicle is delivered to the buyer or lessee. Violation of this requirement by a dealer could result in a civil penalty of up to $21,000 per vehicle. Correct all vehicles in your new vehicle inventory before delivery.**

**New!** **ATTACHMENTS**

| | |
|---|---|
| *Attachment I:* | *Administrative Information* |
| Attachment II: | Labor Allowances and Parts Ordering Information |
| Attachment III: | Technical Information |
| *Owner Notification Letters* | |

© Copyright 2021 Ford Motor Company

**QUESTIONS & ASSISTANCE**

For questions and assistance, contact the Special Service Support Center (SSSC) via the SSSC Web Contact Site. The SSSC Web Contact Site can be accessed through the Professional Technician System (PTS) website using the SSSC link listed at the bottom of the OASIS VIN report screen or listed under the SSSC tab.

Sincerely,

David J. Johnson

© Copyright 2021 Ford Motor Company

ATTACHMENT I
Page 1 of 2

**NEW VEHICLE DEMONSTRATION / DELIVERY HOLD -**
**Safety Recall 21S44** - *Supplement #1*
Certain 2020-2021 Model Year Multiple Vehicle Lines with 360 Degree Cameras
Inoperative 360 Degree Cameras with a Blue Screen

## OASIS ACTIVATION
OASIS was activated on September 23, 2021

## New! FSA VIN LISTS ACTIVATION
FSA VIN Lists were available through https://web.fsavinlists.dealerconnection.com on September 23, 2021. Owner names and addresses will be available by *November 29, 2021.*

**NOTE:** Your FSA VIN Lists may contain owner names and addresses obtained from motor vehicle registration records. The use of such motor vehicle registration data for any purpose other than in connection with this recall is a violation of law in several states, provinces, and countries. Accordingly, you must limit the use of this listing to the follow-up necessary to complete this recall.

## SOLD VEHICLES
- Ford has not issued instructions to stop selling/delivering or driving used vehicles under this safety recall. Owners should contact their dealer for an appointment to have their vehicles remedied as soon as practicable. Owners can continue to safely drive their vehicles.
- Immediately contact any of your affected customers whose vehicles are not on your VIN list but are identified in OASIS. Give the customer a copy of the Owner Notification Letter (when available) and schedule a service date.
- Correct other affected vehicles identified in OASIS which are brought to your dealership.
- Dealers are to prioritize repairs of customer vehicles over repairs of new and used vehicle inventory.

## STOCK VEHICLES
- Correct all affected units in your new vehicle inventory before delivery.
- Use OASIS to identify any affected vehicles in your used vehicle inventory.

## DEALER-OPERATED RENTAL VEHICLES
The Fixing America's Surface Transportation (FAST) Act law effective June 2016 prohibits a rental company from selling, renting or leasing vehicles subject to a safety or compliance recall. Please consult your legal counsel for legal advice.

## TITLE BRANDED / SALVAGED VEHICLES
Affected title branded and salvaged vehicles are eligible for this recall.

## OWNER REFUNDS
Refunds are not approved for this program.

## RENTAL VEHICLES
Rental vehicles are not approved for this program.

© Copyright 2021 Ford Motor Company

### NEW VEHICLE DEMONSTRATION / DELIVERY HOLD -
### Safety Recall 21S44 - *Supplement #1*
Certain 2020-2021 Model Year Multiple Vehicle Lines with 360 Degree Cameras
Inoperative 360 Degree Cameras with a Blue Screen

## LINCOLN PICKUP AND DELIVERY
Owners of 2017 MY and newer Lincoln vehicles have the option of requesting pickup and delivery service with a Lincoln loaner (up to 2 days), from their dealership. For details, reference EFC08708, 2021 Lincoln Pickup & Delivery Updates.

## ADDITIONAL REPAIR (LABOR TIME AND/OR PARTS)
Additional repairs identified as necessary to complete the FSA should be managed as follows:

- For related damage and access time requirements, refer to the Warranty and Policy Manual / Section 6 – Ford & Lincoln Program Policies / General Information & Special Circumstances for FSA's / Related Damage.
- For vehicles within new vehicle bumper-to-bumper warranty coverage, no SSSC approval is required, although related damage must be on a separate repair line with the "Related Damage" radio button checked.
  - Ford vehicles – 3 years or 36,000 miles
  - Lincoln vehicles – 4 years or 50,000 miles
- For vehicles outside new vehicle bumper-to-bumper warranty coverage, submit an Approval Request to the SSSC Web Contact Site prior to completing the repair.

## CLAIMS PREPARATION AND SUBMISSION
- **Claim Entry**: Enter claims using Dealer Management System (DMS) or One Warranty Solution (OWS) online.
  - When entering claims, select claim type 31: Field Service Action. The FSA number 21S44 is the sub code.
  - For additional claims preparation and submission information, refer to the Recall and Customer Satisfaction Program (CSP) Repairs in the OWS User Guide.
- **Related Damage/Additional labor and/or parts**: Must be claimed as Related Damage on a separate repair line from the FSA with same claim type and sub code as described in Claim Entry above.
  **IMPORTANT:** Click the Related Damage Indicator radio button.
- **Lincoln Pickup & Delivery:** Claims for Lincoln Pickup & Delivery with a Lincoln loaner (up to 2 days) should be submitted on a separate line from the FSA. Refer to EFC08708, 2021 Lincoln Pickup & Delivery Updates for details.

©Copyright 2021 Ford Motor Company

ATTACHMENT II
Page 1 of 1

**NEW VEHICLE DEMONSTRATION / DELIVERY HOLD -**
**Safety Recall 21S44** *- Supplement #1*
Certain 2020-2021 Model Year Multiple Vehicle Lines with 360 Degree Cameras
Inoperative 360 Degree Cameras with a Blue Screen

## LABOR ALLOWANCES

| Description | Labor Operation | Labor Time |
|---|---|---|
| Inspect for the availability of an IPMB software update - **PASS** (There is no IPMB software update available, and the software level is at the latest version *LB5T-14F017-AP or higher.* **Recall Complete.** | 21S44A | 0.3 Hours |
| Inspect for the availability of an IPMB software update - **DOES NOT PASS** (An IPMB software update is available) Program the IPMB to the latest software level *(version LB5T-14F017-AP or higher)* using FDRS. **Recall Complete.** | 21S44B | 0.7 Hours |

## PARTS REQUIREMENTS / ORDERING INFORMATION

Parts are not required to complete this repair.

© Copyright 2021 Ford Motor Company

**CERTAIN 2020-2021 MODEL YEAR MULTIPLE VEHICLE LINES WITH 360 DEGREE CAMERAS — INOPERATIVE 360 DEGREE CAMERAS WITH A BLUE SCREEN**

## SERVICE PROCEDURE

### Module Programming

1. Connect a battery charger to the 12V battery.

**NOTE:** Verify that the negative cable of the charger is installed on a chassis or engine ground, and not the 12 volt battery negative terminal to prevent the battery saver mode from activating on the vehicle.

**NOTE:** If the diagnostic software does not load or if the vehicle cannot be identified properly, make sure there is a good internet connection and the Vehicle Communication Module II (VCM II) is properly connected to the Data Link Connector (DLC).

**NOTE:** Make sure the Ford Diagnostic and Repair System (FDRS) does not enter sleep mode during module configuration.

2. Launch FDRS.

**NOTE:** Vehicle information is automatically retrieved by the diagnostic software and a Network Test is run. Vehicle identification data appears on the screen when this is complete.

3. Click 'Read VIN from Vehicle' or manually enter the Vehicle Identification Number (VIN).

**NOTE:** Available modules are shown on the left hand (LH) side of the screen, and available procedures are listed on the right hand (RH) side of the screen. Modules that are communicating are highlighted in green.

4. Select Toolbox tab.

5. From the list on the LH side of the screen, select IPMB - Image Processing Module B (IPMB).

6. From the list on the RH side of the screen, select IPMB Software Update.

**NOTE:** If there is no IPMB software update available, and the software level is at version LB5T-14F017-AP or higher, no further action is required. The service repair is complete.

7. Click RUN. Follow all on-screen instructions carefully.

8. From the list on the RH side of the screen, select Self-Test and click RUN.

9. Click the Run Selected Tests button in the lower right.

10. Click the Clear & Retest button at the top of the screen to clear Diagnostic Trouble Codes (DTC's) in all modules.

11. Disconnect the battery charger from the 12V battery.

12. The repair is complete.

**Important Information for Module Programming**

**NOTE:** When programming a module, use the following basic checks to ensure programming completes without errors.

- Make sure the 12V battery is fully charged before carrying out the programming steps and connect FDRS/scan tool to a power source.

**NOTE:** A good internet connection is necessary to identify the vehicle and to load the diagnostic software.

- Inspect Vehicle Communication Module II (VCM II)/Vehicle Communication and Measurement Module (VCMM) and cables for any damage. Make sure scan tool connections are not interrupted during programming.
- A hardwired connection is strongly recommended.
- Turn off all unnecessary accessories (radio, heated/cooled seats, headlamps, interior lamps, HVAC system, etc.) and close doors.
- Disconnect/depower any aftermarket accessories (remote start, alarm, power inverter, CB radio,etc.).
- Follow all scan tool on-screen instructions carefully.
- Disable FDRS/scan tool sleep mode, screensaver, hibernation modes.
- Create all sessions Key On Engine Off (KOEO). Starting the vehicle before creating a session will cause errors within the programming inhale process.

## Recovering a module when programming has resulted in a blank module

a. Disconnect the VCMII or VCMM from the Data Link Connector (DLC) and your PC.
b. After ten seconds, reconnect the VCMII/VCMM to the DLC and the PC. Launch FDRS. The VCMII/VCMM icon should turn green in the bottom right corner of the screen. If it does not, troubleshoot the FDRS to VCM connection.
c. If you are using the same FDRS as the initial programming attempt, select the appropriate VIN from the Vehicle Identification menu. If you are using a different FDRS, select "Read VIN from Vehicle" and proceed through the Network Test.
d. In the Toolbox menu, navigate to the failed module and Download/Run Programmable Module Installation (PMI). Follow the on-screen prompts. When asked if the original module is installed, select "No" and continue through the installation application.
e. Once programming has completed, a screen may list additional steps required to complete the programming process. Make sure all applicable steps are followed in order.

CPR © 2021 FORD MOTOR COMPANY
DEARBORN, MICHIGAN 48121
11/2021

# Exhibit B

# Part 573 Safety Recall Report      23V-022

| | |
|---|---|
| **Manufacturer Name :** | Ford Motor Company |
| **Submission Date :** | JAN 23, 2023 |
| **NHTSA Recall No. :** | 23V-022 |
| **Manufacturer Recall No. :** | 23S02 |



**Manufacturer Information :**

Manufacturer Name : Ford Motor Company

Address : 330 Town Center Drive
Suite 500 Dearborn MI 48126-2738

Company phone : 1-866-436-7332

**Population :**

Number of potentially involved : 382,759
Estimated percentage with defect : 100 %

---

**Vehicle Information :**

Vehicle  1 : 2020-2023 Ford Explorer

Vehicle Type : LIGHT VEHICLES

Body Style : ALL

Power Train : NR

Descriptive Information : The prior version software was introduced into production on 10/19/2018 at the Chicago Assembly Plant and was taken out of production on 01/03/2023.

This condition affects certain Explorer vehicles equipped with the 360-degree camera; units with the rearview camera only are not affected.

These vehicles are not produced in VIN order.  Information as to the applicability of this action to specific vehicles can best be obtained by either calling Ford's toll-free line (1-866-436-7332) or by contacting a local Ford or Lincoln dealer who can obtain specific information regarding the vehicles from the Ford On-line Automotive Service Information System (OASIS) database.

279,700 Explorer vehicles are affected.

Production Dates : OCT 19, 2018 - JAN 03, 2023

VIN Range  1 : Begin :         NR          End :  NR          ☐ Not sequential

# Part 573 Safety Recall Report       23V-022

|  |  |
|---|---|
| **Vehicle 2 :** | 2020-2023 Lincoln Aviator |
| **Vehicle Type :** | LIGHT VEHICLES |
| **Body Style :** | ALL |
| **Power Train :** | NR |
| **Descriptive Information :** | The prior version software was introduced into production on 10/19/2018 at the Chicago Assembly Plant and was taken out of production on 01/03/2023 |

This condition affects certain Aviator vehicles equipped with the 360-degree camera; units with the rearview camera only are not affected.

These vehicles are not produced in VIN order. Information as to the applicability of this action to specific vehicles can best be obtained by either calling Ford's toll-free line (1-866-436-7332) or by contacting a local Ford or Lincoln dealer who can obtain specific information regarding the vehicles from the Ford On-line Automotive Service Information System (OASIS) database.

72,699 Aviator vehicles are affected.

**Production Dates :** OCT 19, 2018 - JAN 03, 2023

**VIN Range 1 : Begin :** NR     **End :** NR     ☐ Not sequential

|  |  |
|---|---|
| **Vehicle 3 :** | 2020-2022 Lincoln Corsair |
| **Vehicle Type :** | LIGHT VEHICLES |
| **Body Style :** | ALL |
| **Power Train :** | NR |
| **Descriptive Information :** | The prior version software was introduced into production on 09/17/2019 at the Louisville Assembly Plant and was taken out of production on 12/15/2022 |

This condition affects certain Corsair vehicles equipped with the 360-degree camera; units with the rearview camera only are not affected.

These vehicles are not produced in VIN order. Information as to the applicability of this action to specific vehicles can best be obtained by either calling Ford's toll-free line (1-866-436-7332) or by contacting a local Ford or Lincoln dealer who can obtain specific information regarding the vehicles from the Ford On-line Automotive Service Information System (OASIS) database.

30,360 Corsair vehicles are affected.

**Production Dates :** SEP 17, 2019 - DEC 15, 2022

**VIN Range 1 : Begin :** NR     **End :** NR     ☐ Not sequential

# Part 573 Safety Recall Report    23V-022

## Description of Defect :

**Description of the Defect :** The video information from one or more of the 360 cameras, which includes the rear view camera, may fail to feed to the SYNC display screen during some key cycles.  The issue is intermittent and may recover during subsequent ignition cycles. Once present, the issue will likely reoccur on the same camera (s) intermittently.

**FMVSS 1 :** NR

**FMVSS 2 :** NR

**Description of the Safety Risk :** Loss of rear camera image while reversing increases the risk of a crash.

**Description of the Cause :** If a loss of video frames is detected by the Image Processing Module – B (IPMB) the module's response is to display a blue image instead of re-initialize the video pipeline.

**Identification of Any Warning that can Occur :** None.

## Involved Components :

**Component Name  1 :** Rear Camera

**Component Description :** Explorer

**Component Part Number :** LB5T-19G490-D

**Component Name  2 :** Rear Camera

**Component Description :** Aviator

**Component Part Number :** LC5T-19G490-D

**Component Name  3 :** Rear Camera

**Component Description :** Corsair

**Component Part Number :** LJ7T-19G490-B

**Component Name  4 :** IPMB

**Component Description :** Explorer

**Component Part Number :** LB5T-19H423-A

# Part 573 Safety Recall Report     23V-022

Component Name 5 : IPMB

Component Description : Aviator

Component Part Number : LC5T-19H423-A

Component Name 6 : IPMB

Component Description : Corsair

Component Part Number : LJ7T-19H423-A

**Supplier Identification :**

**Component Manufacturer**

Name : Valeo

Address : 150 Stephenson Hwy
Troy Michigan 48083

Country : United States

**Chronology :**

Chronology is provided as an attachment

**Description of Remedy :**

Description of Remedy Program : Owners will be notified by mail and instructed to take their vehicle to a Ford or Lincoln dealer to have the image processing module (IPMB) software updated. There will be no charge for this service.

Ford provided the general reimbursement plan for the cost of remedies paid for by vehicle
owners prior to notification of a safety recall in May 2021. The ending date for reimbursement
eligibility is estimated to be March 10, 2023.

Ford will forward a copy of the notification letters to dealers to the agency when available.

How Remedy Component Differs from Recalled Component : The IPMB software update LB5T-14F017-AY will trigger reinitialization of the camera when loss of video frames are detected.

# Part 573 Safety Recall Report          23V-022

Identify How/When Recall Condition   Not required per 49 Part 573.
          was Corrected in Production :

**Recall Schedule :**

Description of Recall Schedule :  Notification to dealers is expected to occur on January 31, 2023.  Mailing of owner notification letters is expected to begin February 20, 2023  and is expected to be completed by February 24, 2023.

Planned Dealer Notification Date :  JAN 31, 2023 -  JAN 31, 2023

Planned Owner Notification Date :  FEB 20, 2023 -  FEB 24, 2023

* NR - Not Reported

# Exhibit C

# Part 573 Safety Recall Report         23V-342

| | |
|---|---|
| **Manufacturer Name :** Ford Motor Company | |
| **Submission Date :** MAY 12, 2023 |  |
| **NHTSA Recall No. :** 23V-342 | |
| **Manufacturer Recall No. :** 23S23 | |

**Manufacturer Information :**

Manufacturer Name : Ford Motor Company

Address : 330 Town Center Drive
Suite 500 Dearborn MI 48126-2738

Company phone : 1-866-436-7332

**Population :**

Number of potentially involved : 422,201
Estimated percentage with defect : 100 %

**Vehicle Information :**

Vehicle 1 : 2020-2023 FORD EXPLORER

Vehicle Type : LIGHT VEHICLES

Body Style :

Power Train : NR

Descriptive Information : This condition affects certain Explorer vehicles equipped with the 360-degree camera; units with the rearview
camera only are not affected.
The recalled part was introduced into production on 10/19/2018 and was taken out of production on
05/02/2023.
These vehicles are not produced in VIN order. Information as to the applicability of this action to specific
vehicles can best be obtained by either calling Ford's toll-free line (1-866-436-7332) or by contacting a local
Ford or Lincoln dealer who can obtain specific information regarding the vehicles from the Ford On-line
Automotive Service Information System (OASIS) database.
311,453 Explorer vehicles are affected.

Production Dates : OCT 19, 2018 - MAY 02, 2023

VIN Range 1 : Begin :         NR         End :  NR         ☐ Not sequential

# Part 573 Safety Recall Report          23V-342

|  |  |
|---|---|
| **Vehicle 2 :** | 2020-2023 LINCOLN AVIATOR |
| **Vehicle Type :** | LIGHT VEHICLES |
| **Body Style :** | |
| **Power Train :** | NR |

**Descriptive Information :** This condition affects certain Aviator vehicles equipped with the 360-degree camera; units with the rearview
camera only are not affected.
The recalled part was introduced into production on 10/19/2018 and was taken out of production on
05/02/2023.
These vehicles are not produced in VIN order. Information as to the applicability of this action to specific
vehicles can best be obtained by either calling Ford's toll-free line (1-866-436-7332) or by contacting a local
Ford or Lincoln dealer who can obtain specific information regarding the vehicles from the Ford On-line
Automotive Service Information System (OASIS) database.
80,314 Aviator vehicles are affected.

**Production Dates :** OCT 19, 2018 - MAY 02, 2023
**VIN Range 1 : Begin :** NR          **End :** NR          ☐ Not sequential

|  |  |
|---|---|
| **Vehicle 3 :** | 2020-2022 LINCOLN CORSAIR |
| **Vehicle Type :** | LIGHT VEHICLES |
| **Body Style :** | |
| **Power Train :** | NR |

**Descriptive Information :** This condition affects certain Corsair vehicles equipped with the 360-degree camera; units with the rearview
camera only are not affected.
The recalled part was introduced into production on 01/07/2019 and was taken out of production on
12/15/2022.
These vehicles are not produced in VIN order. Information as to the applicability of this action to specific
vehicles can best be obtained by either calling Ford's toll-free line (1-866-436-7332) or by contacting a local Ford or Lincoln dealer who can obtain specific information
regarding the vehicles from the Ford On-line
Automotive Service Information System (OASIS) database.
30,434 Corsair vehicles are affected.

**Production Dates :** JAN 07, 2019 - DEC 15, 2022
**VIN Range 1 : Begin :** NR          **End :** NR          ☐ Not sequential

# Part 573 Safety Recall Report      23V-342   

**Description of Defect :**

Description of the Defect : Customers may intermittently experience either a rear camera blue image or a full blue or black image on the SYNC screen when the vehicle is placed in reverse, or when the 360-degree view is selected and available (during low-speed operation).

FMVSS 1 : NR

FMVSS 2 : NR

Description of the Safety Risk : Loss of rear camera image while in reverse increases the risk of a crash

Description of the Cause : When a loss of video frames in the Image Processing Module – B (IPMB) occurs during the re-initialization process or when the cameras enter sleep mode during re-initialization process, the vehicle is susceptible to rear camera blue image or a full blue or black screen.The root cause for the loss of video frames is still unknown and under investigation.

Identification of Any Warning that can Occur : None

---

**Involved Components :**

Component Name 1 : Not reported

Component Description : Not reported

Component Part Number : Not reported

---

**Supplier Identification :**

**Component Manufacturer**

Name : Not reported

Address : Not reported

Not reported Not reported

Country : NR

---

**Chronology :**

Chronology is provided as an attachment.

---

# Part 573 Safety Recall Report    23V-342

**Description of Remedy :**

Description of Remedy Program :   The remedy is under development. When a remedy is available, owners will be notified by mail and instructed
to take their vehicle to a Ford or Lincoln dealer to have the remedy performed on their vehicle. There will be
no charge for this service.
Ford provided the general reimbursement plan for the cost of remedies paid for by vehicle
owners prior to notification of a safety recall in May 2021. The ending date for reimbursement
eligibility is estimated to be June 30, 2024.
Ford will forward a copy of the notification letters to dealers to the agency when available.

How Remedy Component Differs from Recalled Component :   The remedy is under development. Root cause is unknown.

Identify How/When Recall Condition was Corrected in Production :   Not required per 49 Part 573.

**Recall Schedule :**

Description of Recall Schedule :   Notification to dealers is expected to occur on May 12, 2023. Mailing of owner notification letters is expected
to begin June 26, 2023, and is expected to be completed by June 30, 2023.

Planned Dealer Notification Date :   MAY 12, 2023 - MAY 12, 2023

Planned Owner Notification Date :   JUN 26, 2023 - JUN 30, 2023

\* NR - Not Reported

# Exhibit D

# Part 573 Safety Recall Report 21V-735

| | |
|---|---|
| **Manufacturer Name :** | Ford Motor Company |
| **Submission Date :** | SEP 23, 2021 |
| **NHTSA Recall No. :** | 21V-735 |
| **Manufacturer Recall No. :** | 21S44 |



**Manufacturer Information :**

Manufacturer Name : Ford Motor Company

Address : 330 Town Center Drive
Suite 500 Dearborn MI 48126-2738

Company phone : 1-866-436-7332

**Population :**

Number of potentially involved : 228,297
Estimated percentage with defect : 44 %

**Vehicle Information :**

Vehicle 1 : 2020-2021 Ford Explorer

Vehicle Type : LIGHT VEHICLES

Body Style : ALL

Power Train : NR

Descriptive Information : The prior version software was introduced into production on 10/19/2018 at the Chicago Assembly Plant and was taken out of production on 09/07/2021.

This condition affects certain Explorer vehicles equipped with the 360-degree camera; units with the rearview camera only are not affected.

These vehicles are not produced in VIN order. Information as to the applicability of this action to specific vehicles can best be obtained by either calling Ford's toll-free line (1-866-436-7332) or by contacting a local Ford or Lincoln dealer who can obtain specific information regarding the vehicles from the Ford On-line Automotive Service Information System (OASIS) database.

165,191 Explorer vehicles are affected

Production Dates : OCT 10, 2018 - SEP 07, 2021

VIN Range 1 : Begin : NR End : NR ☐ Not sequential

# Part 573 Safety Recall Report     **21V-735**

|                            |                                                                                                                                                                                                                                                          |
|----------------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| Vehicle 2 :                | 2020-2021 Lincoln Corsair                                                                                                                                                                                                                                 |
| Vehicle Type :             | LIGHT VEHICLES                                                                                                                                                                                                                                            |
| Body Style :               | ALL                                                                                                                                                                                                                                                      |
| Power Train :              | NR                                                                                                                                                                                                                                                       |
| Descriptive Information :  | The prior version software was introduced into production on 01/07/2019 at the Louisville Assembly Plant and was taken out of production on 09/07/2021.                                                                                                   |

This condition affects certain Corsair vehicles equipped with the 360-degree camera; units with the rearview camera only are not affected.

These vehicles are not produced in VIN order. Information as to the applicability of this action to specific vehicles can best be obtained by either calling Ford's toll-free line (1-866-436-7332) or by contacting a local Ford or Lincoln dealer who can obtain specific information regarding the vehicles from the Ford On-line Automotive Service Information System (OASIS) database.

17,008 Corsair vehicles are affected

| Production Dates : | JAN 07, 2019 - SEP 07, 2021 | | |
|---|---|---|---|
| VIN Range  1 : Begin : | NR | End :  NR | ☐ Not sequential |

|                            |                                                                                                                                                                                                                                                          |
|----------------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| Vehicle 3 :                | 2020-2021 Lincoln Aviator                                                                                                                                                                                                                                 |
| Vehicle Type :             | LIGHT VEHICLES                                                                                                                                                                                                                                            |
| Body Style :               | ALL                                                                                                                                                                                                                                                      |
| Power Train :              | NR                                                                                                                                                                                                                                                       |
| Descriptive Information :  | The prior version software was introduced into production on 10/19/2018 at the Chicago Assembly Plant and was taken out of production on 09/02/2021.                                                                                                      |

These vehicles are not produced in VIN order. Information as to the applicability of this action to specific vehicles can best be obtained by either calling Ford's toll-free line (1-866-436-7332) or by contacting a local Ford or Lincoln dealer who can obtain specific information regarding the vehicles from the Ford On-line Automotive Service Information System (OASIS) database.

46,098 Aviator vehicles are affected

| Production Dates : | OCT 19, 2018 - SEP 02, 2021 | | |
|---|---|---|---|
| VIN Range  1 : Begin : | NR | End :  NR | ☐ Not sequential |

# Part 573 Safety Recall Report    21V-735

### Description of Defect :

**Description of the Defect :** The video information from one or more of the 360 cameras, which includes the rear view camera, may fail to feed to the SYNC display screen during some key cycles. The issue is intermittent and may recover during subsequent ignition cycles. Once present, the issue will likely reoccur on the same camera (s) intermittently. Loss of rear camera image while backing increases the risk of a crash.

**FMVSS 1 :** NR

**FMVSS 2 :** NR

**Description of the Safety Risk :** Loss of rear camera image while reversing increases the risk of a crash.

**Description of the Cause :** An unused general purpose output pin on the digital camera was left open. If this pin is not pulled low it may be affected by leakage current, resulting in a loss of video output.

**Identification of Any Warning that can Occur :** None

### Involved Components :

**Component Name 1 :** Rear Camera

**Component Description :** Explorer

**Component Part Number :** LB5T-19G490-D

**Component Name 2 :** Rear Camera

**Component Description :** Aviator

**Component Part Number :** LC5T-19G490-D

**Component Name 3 :** Rear Camera

**Component Description :** Corsair

**Component Part Number :** LJ7T-19G490-B

**Component Name 4 :** IPMB

**Component Description :** Explorer

**Component Part Number :** LB5T-19H423-A

# Part 573 Safety Recall Report        21V-735

---

Component Name 5 : IPMB

Component Description : Aviator

Component Part Number : LC5T-19H423-A

---

Component Name 6 : IPMB

Component Description : Corsair

Component Part Number : LJ7T-19H423-A

---

**Supplier Identification :**

**Component Manufacturer**

Name : Magna Electronics

Address : 10410 N. Holly Road

Holly  48442

Country : NR

---

**Chronology :**

March 9, 2021: Ford's Critical Concerns Review Group (CCRG) opened an investigation into reports of intermittent loss of image on the rearview camera display identified on China market vehicles.  359 warranty claims were identified as responsive to this concern.

March – April 2021: Warranty claims and VOQs were reviewed.  14 VOQs were identified, and CCRG determined the vehicle population was compliant to FMVSS 111 when reviewing low time in service claims. CCRG aligned on continued monitoring of warranty rates and VOQ to determine if a safety defect existed.

June-July 2021: Ford released an IPMB software service fix that addressed this and other quality items on June 16, 2021.

August 2021: The CCRG monitoring effort identified an increase to 1867 warranty reports and 27 VOQs related to this concern.  Warranty trend data indicates higher failure rates after 18 months in service

On September 15, 2021, Ford's Field Review Committee reviewed the concern and approved a field action.

Ford is aware of two reported accidents, and not aware of any reports of injury related to this condition.

---

# Part 573 Safety Recall Report  **21V-735**

---

**Description of Remedy :**

Description of Remedy Program : Owners will be notified by mail and instructed to take their vehicle to a Ford or Lincoln dealer to have the image processing module (IPMB) software updated. There will be no charge for this service.

Ford is excluding reimbursement for costs because the original warranty program would provide for a free repair for this concern.

Ford will forward a copy of the notification letters to dealers to the agency when available.

How Remedy Component Differs from Recalled Component : The IPMB software update LB5T-14F017-AP will control the digital camera general purpose output pin low.

Identify How/When Recall Condition was Corrected in Production : Production IPMB LB5T-19H423-AR, LC5T-19H423-AR, LJ7T-19J201-AR, and LV4T-19J201-AR will include the software fix to address this condition. This was introduced into production on September 15, 2021.

---

**Recall Schedule :**

Description of Recall Schedule : Notification to dealers is expected to occur on September 23, 2021. Mailing of owner notification letters is expected to begin October 7, 2021 and is expected to be completed by October 14, 2021.

Planned Dealer Notification Date : SEP 23, 2021 - SEP 23, 2021

Planned Owner Notification Date : OCT 07, 2021 - OCT 14, 2021

---

\* NR - Not Reported

# Exhibit E

Date of Submission: 1/23/202
FSA **23S02** –Certain 2020-23 model year Ford Explorer, Lincoln Corsair and Aviator
vehicles with 360-degree cameras – Rear camera blue image.


<u>Chronology</u>


On October 22, 2021, NHTSA contacted Ford regarding (3) Vehicle Owner
Questionnaires (VOQs) related to allegations of a blue image in the rear camera display
after the completion of 21S44. Product Development (PD) and Ford Customer Service
Division (FCSD) teams identified an issue with the service tool that resulted in dealers
not installing the 21S44 remedy software in vehicles.  This issue was promptly corrected
for service, and VINs that had been repaired were re-opened for 21S44 remedy in
November, 2021.

On January 26, 2022, NHTSA provided an additional (5) VOQs related to allegations of
a blue image in the rear camera display after the completion of 21S44.  Ford responded
to NHTSA on February 23, 2022 with a summary of findings regarding the VOQs and the
service tool issue and remedy.

On March 15, 2022, Ford's Critical Concern Review Group (CCRG) opened an
investigation after receiving 13 VOQs related to a blue image in the rear camera display
after the completion of 21S44.

From March through June 2022, Ford continued to work with suppliers to analyze claims
relating to blue screens.  Analyzing claims was complicated by 2 unique failure modes
(full blue screen and rear only blue image) which resulted in similar claims.  Ford worked
with suppliers, analyzed over 100 cameras replaced in the field for blue screen
symptoms, and analyzed returned IPMB modules, eliminating potential root causes.
Ford and supply base were unable to replicate the concern in the laboratory or in-vehicle
until December, 2022.

From June through October, 2022, Ford continued to work with suppliers to analyze
claims relating to blue screens.  In July 2022,  Ford identified a susceptibility of the
system to enter standby mode due to lack of reinitialization strategy; however, Ford was
not able to replicate this susceptibility in a vehicle.  Work started with the supplier to
eliminate the potential for this susceptibility to occur.

Throughout the time period from March 2022 to November 2022, Ford continued to
monitor warranty claims attributed to this concern, and rates remained at a low level.

On December 7, 2022, the CCRG observed an increasing trend in warranty rates for
blue screen on vehicles produced after the 21S44 clean point, after 9 months in service.
Ford's CCRG issued a Stop-Ship for the affected vehicle lines.

As of November 30, 2022, there have been 2115 warranty reports alleging occurrence of
rear camera blue images for vehicles produced with software version IT 15.4. As of

January 5, 2023, there have been 21 NHTSA (VOQs) for customers experiencing rear camera blue image related to this concern, with 16 VOQs confirmed to have occurred post FSA 21S44 completion.

Ford is aware of 17 reported minor accidents allegedly resulting from blue screen symptoms, and not aware of any reports of injury related to this condition.

# Exhibit F

NANETTE KATZ BA-NA5U-ABPE
505 DEERFIELD CT
BLUE BELL, PA 19422-2170

A4d2337/010685/10685

771606Y19637

## *** IMPORTANT SAFETY RECALL ***

April 2023

**Safety Recall Notice 23S02 / NHTSA Recall 23V022**

2021 Aviator
Your Vehicle Identification Number (VIN): 5LMYJ8XY3MNL00479

This notice is sent to you in accordance with the National Traffic and Motor Vehicle Safety Act.

Lincoln has decided a defect which relates to motor vehicle safety exists in your vehicle, with the VIN shown above.

We apologize for this situation and want to assure you, with your assistance, we will correct this condition. Our commitment, together with your retailer, is to provide you with the highest level of service and support.

**What is the issue?**

Lincoln has put a temporary hold on updating vehicles for this Field Service Action (23S02).

Previously, your vehicle may have had a similar but different recall repair for a rear camera blue or blank screen. Following completion of that recall repair, it may still be possible to intermittently experience a rear camera blue image on the SYNC screen when the vehicle is placed in reverse, or when the 360 degree view is selected and available (during low-speed operation). Once displayed, the rear camera blue image will persist for the remainder of the ignition ON cycle. Once present, the issue is likely to reoccur on subsequent key cycles.

**What is the risk?**

The loss of the rear camera image during a reverse action increases the risk of a crash.

**What will Lincoln and your retailer do?**

Lincoln is working on a service fix. When a fix becomes available, Lincoln will notify you via mail to schedule a service appointment with your retailer for repairs to be completed free of charge (parts and labor).

at should you do?

Until a service fix is available, if your rear camera image is displaying a blue or blank screen while in reverse, the following may restore the image:

1. Shift the gear selector into **Park**
2. Turn vehicle OFF
3. Restart engine
4. Shift into **Reverse**

When a service fix becomes available, Lincoln will send a letter to inform you to contact your retailer to schedule a repair.

Lincoln has **not** issued instructions to stop driving your vehicle under this safety recall.

If you do not already have a servicing retailer, you can access Lincoln.com/support for retailer addresses, maps, and driving instructions.

**Please note: Federal law requires that any vehicle lessor receiving this recall notice must forward a copy of this notice to the lessee within ten days.**

NOTE: You can receive information about Recalls and Customer Satisfaction Programs through The Lincoln Way App. The app can be downloaded through the App Store or Google Play. In addition, there are other features such as controlling certain functions on your vehicle (lock or unlock doors, remote start) if it is equipped to allow control.

ou previously
. this repair?

If you have previously paid for a repair that addresses the issue described in this letter, you still need to have this recall performed to ensure the correct procedures were used.

You may be eligible for a refund of previously paid repairs. Refunds will only be provided for service related to a replacement of the rear camera or the Image Processing Module B (IPMB) only after a previous recall was not able to correct the rear camera blue or blank screen concern. To verify eligibility and *expedite reimbursement*, you should submit your paid original receipt to your retailer.

To request your refund directly from Lincoln, send the refund request with all required documentation, including your original repair receipt (no photocopies), to Lincoln at P.O. Box 6251, Dearborn, Michigan 48121-6251. *Refund requests mailed to this address may take up to 60 days to process. Your original receipt will be returned to you.*

Detailed information regarding eligibility for Lincoln's reimbursement program and documentation requirements may be obtained by contacting our Customer Relationship Center at 1-866-436-7332.